22 C. C. P. A. (Patents)

## In re HARRISON.

### Patent Appeal No. 3491.

Court of Customs and Patent Appeals.
June 10, 1935.

Fay, Oberlin & Fay, of Washington, D. C. (Almon S. Nelson, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 16, 17,

18, 20, 21, 23, and 31 in appellant's application for a patent for an alleged invention relating to a process for converting hydrocarbon oils into lighter hydrocarbons.

Claims 16, 18, and 20 are sufficiently illustrative. They read:

"16. In a process of heat-treating hydrocarbons, heating a petroleum stream to liquid-phase cracking temperatures, simultaneously heating another petroleum stream to vapor-phase cracking temperatures at less pressure, and discharging both highly heated substantially uncooled streams directly into mixture together in a further zone while abruptly lowering the pressure of the stream from the liquid-phase operation, the zone of admixture being under a super-atmospheric pressure."

"18. In a process of heat-treating hydrocarbons, heating a petroleum stream to liquid-phase cracking temperatures, simultaneously heating another petroleum stream to vapor-phase cracking temperatures at less pressure, passing the vapor-phase stream to a time reaction zone guarded against substantial heat loss, and discharging the highly heated vapor-phase cracking stream and the liquid-phase cracking stream into admixture together in a further zone while abruptly lowering the pressure of the stream from the liquid-phase operation, the zone of admixture being under a super-atmospheric pressure."

"20. In a process of heat-treating hydrocarbons, heating a petroleum stream to liquid-phase cracking temperatures, simultaneously heating another petroleum stream to vapor-phase cracking temperatures at less pressure, discharging both such highly heated substantially uncooled streams into admixture together in a further zone while abruptly lowering the pressure of the liquid-phase stream, the zone of admixture being under a super-atmospheric pressure, taking off and fractionating the vaporous products from the zone of admixture, and returning a naphtha fraction as the petroleum supply stream to the vapor-phase cracking operation."

The references are: Lang, 954,575, April 12, 1910; Perelis, 1,701,477, February 5, 1929; Isom, 1,708,180, April 9, 1929; Isom, 1,722,223, July 23, 1929; Greenstreet, 1,740,691, December 24, 1929; Herthel et al., 1,747,437, February 18, 1930; Pratt, 1,752,264, March 25, 1930; Tinker, 1,779,-222, October 21, 1930; Fixman, 1,781,872, November 18, 1930.

We think the appealed claims sufficiently describe appellant's process.

Claims 19 and 22 were allowed by the Primary Examiner. Claim 19 is illustrative. It reads: "19. In a process of heat-treating hydrocarbons, heating a petroleum stream to a liquid-phase cracking temperature not exceeding 975° F. and a pressure of 400–1200 pounds per square inch, simultaneously heating another petroleum stream to a vapor-phase cracking temperature of 1025–1125° F. and a pressure not exceeding 200 pounds per square inch, passing the vapor-phase stream to a time reaction zone guarded against substantial heat loss wherein the velocity is diminished, and discharging the highly heated vapor-phase cracking stream and the entire liquid-phase cracking stream into admixture together in a further zone while abruptly lowering the pressure of the stream from the liquid-phase operation to not exceeding 200 pounds per square inch."

It will be observed that claim 19 contains the limitation "passing the vapor-phase stream to a time reaction zone guarded against substantial heat loss *wherein the velocity is diminished.*" (Italics ours.)

The Primary Examiner described the references as follows:

"Lang shows an early use of a double tube system for cracking first a heavy hydrocarbon in tubes 5 and tubes 8 and vaporizing in these latter tubes and fractionating and returning light fractions to be heated to cracking temperatures coil 29 and vaporizing zones 8. Lang mentions no temperatures relying on the skill of the operator but he does destructively heat the vapors, see page 2, line 125.

"Isom heats heavy oil to high pressure in coil 5 and temperatures of 750° to 800° F., the pressure dropping in drum 55, to atmospheric or higher pressures may be used, and maintains temperatures of 1000° to 1200° F. on coil 23 and only enough pressure to force the oil in the drum. Isom maintains a small time reaction zone 26 which also serves to remove residual heavy polymers and carbon. The light fractions from fractionators 12 and 16 are returned as charging stock.

"Isom 1,722,223 is similar to the above Isom patent. Isom uses naphtha bottoms as charging stock for the high temperature coil.

"Greenstreet has similar conditions but no time reaction zone, unless the last sec-

tions of the coil be considered as time reaction zones which is so done in Perclis of record. A tube is a time reaction zone unless differentiated by such a phrase as—diminishing the velocity of the heated hydrocarbons.

"Herthel maintains optimum conditions in each coil 4 and 6 to crack the respective charging stocks admitted, one lighter than the other.

"Pratt cracks oil in 17 at pressures apparently under 200 lbs. per sq. inch, at 800° F. thereabouts, then vaporizes in D at a pressure less than maintained in the distillate high temperature coil 32 (around atmospheric plus pressure necessary to force it thru the coil which is considerable at the pump end. The coil 32 can be considered to have a time reaction section in the low temperature portion of the furnace and the oil is heated to 1100° F. under low pressure.

"Tinker and Fixman show reduced pressure zones on their light distillate cracking coils which also serve as time reaction zones. Note valve 68 of Fixman and valve V', Fig. 5 of Tinker. * * *"

—and held that the appealed claims were substantially met by the patents to Isom and Pratt. He further stated: "Applicant has attempted to distinguish over Pratt by the phrase 'discharging both highly heated substantially uncooled streams directly into admixture together' to show a difference between the time reaction step of Pratt in coil 36 but this step is already old in the other references and the time reaction zones of Pratt and the applicant are considered to be substantially the same in effect insofar as they are claimed."

In its decision, the Board of Appeals stated that the Examiner had relied mainly on the Isom and Pratt patents, and, after describing the Isom patents, stated that: "In neither one of these patents is there any abrupt lowering of the pressure of the liquid phase stream as it enters the drum 55 as called for by the claims. As shown, the pressure in the coil 5 is the same as in the drum 55. It is not evident that these patents anticipate the claims as they apparently lack the most essential feature stressed by applicant."

The Board then described the patent to Pratt, and held that claim 16 was anticipated by that reference; that claim 17 was also unpatentable in view of the Pratt reference; that claim 18 included the limitation "passing the vapor-phase stream to a time reaction zone," which was a well-known step as shown "in Isom"; that it did not involve invention to add that step to the process disclosed in the patent to Pratt; that claims 20, 21, 23, and 31 included the step of "fractionating the vaporous products from the zone of admixture, and returning a naphtha fraction as the petroleum supply stream to the vapor-phase cracking operation"; that that feature of appellant's process was disclosed in the Isom patents; and that the addition of that step in the process disclosed in the patent to Pratt would not involve invention.

In describing the Pratt reference, and in holding that it substantially anticipated appealed claims 16 and 17, the Board said: "Referring to the drawing, oil from a supply tank A passes through a coil 7 where it is heated and then flows through the coil 17 where the temperature is raised to 800° F. It is then discharged into the expansion chamber D kept at atmospheric pressure. Lighter oil from the dephlegmator is pumped through the coil 32 where it is heated to 1100° F. and cracked in vapor phase under atmospheric pressure. The light vapor passes through the coil 35 where it cools the oil in the bottom of the expansion chamber and finally passes upward between the baffles in the expansion chamber and mixes with the heavy vapor from the coil 17. It appears to us that claim 16 reads in all substantial respects on this patent. We do not think that the vapor from the coil 32 is cooled to such an extent in the coil 35 so as to materially effect the result desired. Also it is believed of no patentable consequence whether the pressure in the expansion chamber D is atmospheric or above. Some pressure could readily be applied to the chamber if desired."

We are unable to understand that portion of the Board's description of the disclosure contained in the Pratt reference, where it is stated that the light vapor from the heating coil in the cracking furnace passes through the heat exchanger, referred to by the Board as "coil 35," and cools the oil in the bottom of the expansion chamber.

The purpose of the heat exchanger coil, as stated by the patentee in his specification, is to "reboil all light distillates from the residual oil in the bottom of expansion chamber and *at the same time reduce the temperature of the oil entering the expan-*

*sion chamber from the cracking furnace coil*"; and that the "cracked vapors from the coil 32 can be brought to a temperature such that they will, upon contacting with the films of preheated crudes in the vaporizing chamber D, crack and further vaporize said preheated crudes, leaving as a liquid in said chamber D the residuums and coke-forming constituents." (Italics ours.)

It is clear from the patentee's specification that the light vapor, passing from the heating coil in the cracking furnace through the heat exchanger, was intended to be substantially cooled in the heat exchanger by its use as a medium for further vaporization of the "preheated crudes" or "residual oil" in the bottom of the expansion chamber.

Appellant's process, on the contrary, as clearly stated in each of the appealed claims, discharges a stream of light hydrocarbons of relatively high temperature into admixture with a stream of heavy hydrocarbons of relatively lower temperature; neither stream being substantially reduced in temperature, although the pressure of the stream of hydrocarbons is abruptly lowered.

We think it is clear·from the record that claims 16 and 17 are not "substantially met," as held by the Board of Appeals, by the disclosure contained in the patent to Pratt.

It is true, as observed by the Board, that the patents to Isom disclose "passing the vapor-phase stream to a time reaction zone," one of the steps contained in appealed claim 18, and that they disclose the step of "fractionating the vaporous products from the zone of admixture, and returning a naphtha fraction as the petroleum supply stream to the vapor-phase cracking operation," one of the steps included in claims 20, 21, 23, and 31. However, we are unable to agree that those references, combined with the disclosure contained in the patent to Pratt, are sufficient upon which to base a rejection of those claims.

Although we agree with the Solicitor for the Patent Office, that a combination of references may be cited in order to show that all the steps of a process are old, and that invention was not involved in combining them, see In re Downs et al., 45 F.(2d) 251, 18 C. C. P. A. (Patents) 803; In re Armbruster, 47 F.(2d) 815, 18 C. C. P. A. (Patents) 1039, nevertheless, we are of opinion that, in the case at bar, the refer-

ences cited, neither singly nor in combination, suggest appellant's process as defined in the appealed claims.

Other than the patents to Isom and Pratt, the references were not discussed in detail in either of the decisions of the tribunals of the Patent Office, and, although we have carefully considered them, we deem it unnecessary to discuss them here.

For the reasons stated, we are of opinion that the appealed claims involve invention.

The decision of the Board of Appeals is reversed.

Reversed.